**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

CARL G. NICHOLS, III, and
LIESE M. NICHOLS,

    Plaintiffs,

v.                                       Case No. 10-02072

GMAC HOME MORTGAGE
CORPORATION,

    Defendant.

_____/

**OPINION AND ORDER
(1) DENYING DEFENDANT'S MOTION TO STRIKE
PLAINTIFFS' COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT;
(2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; AND
(3) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Defendant GMAC Home Mortgage Corporation ("GMAC") accelerated a mortgage loan held by Plaintiffs Carl Nichols, III, and Liese Nichols and initiated foreclosure proceedings. Plaintiffs sued GMAC to prohibit the foreclosure. After filing for Chapter 11 bankruptcy, GMAC moves for partial summary judgment on all of Plaintiffs' claims not subject to the automatic stay under 11 U.S.C. § 362(a). Plaintiffs cross-move for partial summary judgment, alleging that GMAC wrongfully refused to accept a September 15, 2012 mortgage payment and wrongfully accelerated the mortgage loan. GMAC moves to strike Plaintiffs' counter-motion for partial summary judgment, arguing that the motion was untimely filed.

      On December 21, 2012, the court granted Plaintiffs' motion to accept their late-filed counter-motion for partial summary judgment. Accordingly, the court will deny

GMAC's motion to strike Plaintiffs' counter-motion for partial summary judgment. Furthermore, for the following reasons, the court will deny Plaintiffs' counter-motion for partial summary judgment and grant GMAC's motion for partial summary judgment.

## I. BACKGROUND

On June 3, 2004, Plaintiffs Carl Nichols, III, and Liese Nichols executed a deed of trust on their home located at 2243 Jefferson Avenue, Memphis, Tennessee (the "Property"). The deed of trust secured a $400,000 adjustable rate note executed by Mr. Nichols. GMAC was the servicer of Plaintiffs' account for the note and the deed of trust. On October 24, 2004, GMAC sent Mr. Nichols a letter stating that GMAC did not have evidence of the Property's hazard insurance. The letter instructed that if Mr. Nichols did not send proof of coverage, then GMAC would purchase insurance for the Property and Plaintiffs would be responsible for the insurance charges. Plaintiffs did not provide proof of insurance, and a second letter was sent on December 8, 2004, explaining that GMAC would soon acquire lender-placed hazard insurance if Plaintiffs did not submit their hazard insurance policy. On January 26, 2005, after not receiving proof of coverage from Mr. Nichols, GMAC informed Plaintiffs that it had obtained lender-placed insurance to cover the Property from July 17, 2004, though July 17, 2005. The lender-placed insurance cost $5,746.

On March 18, 2005, Mr. Nichols provided GMAC with proof of insurance. The effective date on Plaintiffs' insurance policy, however, was later than the effective date of the lender-placed insurance policy. As a result, on April 1, 2005, Plaintiffs received a partial credit of $1,952 to the escrow account, leaving a balance of $3,794 due on the lender-placed insurance policy. On July 24, 2009, Plaintiffs filed a complaint with the

Tennessee Department of Financial Institutions alleging that GMAC was improperly charging Plaintiffs with fees. GMAC reviewed Plaintiffs' file and located evidence of Plaintiffs' hazard insurance policy that covered the Property from the origination of the mortgage loan. GMAC informed the Tennessee Department of Financial Institutions that the lender-placed insurance should not have been placed on the Property and, on August 6, 2009, credited the remaining balance of $3,794 to the escrow account.

Plaintiffs had difficulty staying current on their mortgage loan throughout 2008. As of September 1, 2008, Plaintiffs were three months behind on their mortgage payments. In July and August of 2008, GMAC mailed Plaintiffs a notice of default, instructing Plaintiffs that if they did not cure the default within thirty days, GMAC would accelerate the mortgage loan and begin foreclosure proceedings. When Plaintiffs did not cure the default, GMAC accelerated the mortgage loan in October 2008 and, after postponing the foreclosure sale multiple times, scheduled foreclosure for November 19, 2009. On that date, Plaintiffs sued GMAC and its foreclosure firm, McCurdy & Candler, LLC, to prohibit foreclosure. The foreclosure sale was cancelled and has not been rescheduled due to Plaintiffs' lawsuit.

Plaintiffs agreed to voluntarily dismiss McCurdy & Candler, LLC, after deciding it was not an appropriate party. In May 2012, GMAC filed for Chapter 11 bankruptcy. The court issued a stipulated order clarifying which claims against GMAC were subject to the automatic stay under 11 U.S.C. § 362(a). (Dkt. # 48.) GMAC moves for summary judgment on the claims that were not stayed and allowed to proceed.[1]

---

[1] The following claims were not subject to the automatic stay:

1. Plaintiffs' claim that Defendants cannot conduct a foreclosure sale through its Substitute Trustee, Patrick A. Taggart, under Tenn. Code Ann. § 35-5-114, (Dkt. # 1-1 at Pg ID 6 ¶¶ 3-4), insofar as this purported violation would prohibit foreclosure. To the extent this claim seeks money damages, it is stayed.

2. Plaintiffs' claim that the "loan agreement as advertised, as implemented, and as executed violates the Tennessee Consumer Protection Act as contemplated by [Tenn. Code Ann. §] 47-18-101 *et seq.*," (Dkt. # 1-1 at Pg ID 7 ¶ 6), insofar as this purported violation would prohibit foreclosure. To the extent this claim seeks monetary damages, it is stayed.

3. Plaintiffs' claim that the "Deed of Trust . . . is a contract of adhesion; not contemplated, read or negotiated by the parties," (Dkt. # 1-1 at Pg ID 7 ¶ 7), insofar as this claim purports to prohibit foreclosure. To the extent this claim seeks monetary damages, it is stayed.

4. Plaintiffs' claim that Defendants' conduct violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, by not communicating the foreclosure notice, (Dkt. # 1-1 at Pg ID 8 ¶ 8), insofar as this purported violation prohibits foreclosure. To the extent this claim seeks monetary damages, it is stayed.

5. Plaintiffs' claim that Defendants' foreclosure efforts are "self-evidently defective and are lacking even a basic understanding of foreclosure in Shelby County, Tennessee," (Dkt. # 1-1 at Pg ID 9 ¶ 17), to the extent that this purports to prohibit foreclosure. To the extent this claim seeks monetary damages, it is stayed.

6. Plaintiffs' prayer for "a temporary restraining order, preliminary injunction and/or permanent injunction to protect the rights of the Plaintiffs and keep them in their homes before, during, and after the 'threatened' foreclosure and until this litigation can be resolved." (Dkt. # 1-1 at Pg ID 10 ¶ 4.)

7. Plaintiffs' claim that the "foreclosure sale should never occur." (Dkt. # 1-1 at Pg ID 7 ¶ 5.)

8. Plaintiffs' claim that they "secured this loan through a misrepresented loan application and loan process" and that the loan was "predatory, cost excessive, and not truthfully or correctly explained to them," (Dkt. # 1-1 at Pg ID 7 at ¶ 6), insofar as this claim purports to prohibit foreclosure. To the extent this claim seeks monetary damages, it is stayed.

Plaintiffs counter-moved for summary judgment, abandoning all of their non-stayed claims except for two: (1) GMAC wrongfully refused to accept Plaintiffs' September 15, 2008 loan payment of $3,688.92; and (2) GMAC wrongfully accelerated the mortgage loan in October 2008.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

---

9. Plaintiffs' claim that they "have never been furnished with a ledger card, account summary or any other discernible information which could be reviewed to show the status on the loan with the Defendant, save for the information which has been furnished and required by the foreclosing attorneys—which is illegal in nature anyway," (Dkt. # 1-1 at Pg ID 169 ¶ 14), to the extent Plaintiffs claim this as a basis to prohibit foreclosure. To the extent Plaintiffs' claims are for monetary relief, they are stayed.

(Dkt. # 48 at Pg ID 3-5.)

5

party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Id.* at 251-52.  When deciding summary judgment motions, "the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The court does not weigh the evidence to determine the truth of the matter, but rather to determine if the evidence creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson*, 477 U.S. at 249).

## III. DISCUSSION

GMAC argues that Plaintiffs' wrongful acceleration claim is time-barred.  Tennessee law imposes a three-year statute of limitations for injuries to personal or real property.  Tenn. Code. Ann. § 28-3-105.  "The three-year limitations period applies when a defendant has allegedly breached his contract, causing injury to the personal or real property of the plaintiff."  *Cumberland & Ohio Co. of Tex., Inc., v. First Am. Nat'l Bank*, 936 F.2d 846, 848 (6th Cir. 1991) (citing *Pera v. Kroger Co.*, 674 S.W.2d 715, 719-20 (Tenn. 1984)).  According to GMAC, Plaintiffs' wrongful acceleration claim arises from GMAC negligently obtaining lender-placed insurance for the Property on January 26, 2005.  As Plaintiffs did not sue GMAC until November 19, 2009—over four years after GMAC acquired the lender-placed insurance—GMAC contends that the wrongful acceleration claim is barred by the statute of limitations.

6

While Plaintiffs assert that GMAC's improper assessments, including its lender-placed insurance, caused the wrongful acceleration, Plaintiffs are not seeking relief from the improper lender-placed insurance. Indeed, GMAC has already fully credited Plaintiffs for the cost of the lender-placed insurance. Instead, Plaintiffs allege that foreclosure should be prohibited because GMAC wrongfully accelerated their mortgage loan. A "plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *John Kohl & Co. P.C., v. Dearborn & Ewing*, 977 S.W.2d 528, 533 (Tenn. 1998) (citations omitted). It is axiomatic that a wrongful acceleration claim cannot accrue before the acceleration occurs. Plaintiffs were placed on notice that their mortgage loan was accelerated when GMAC so notified Plaintiffs in October 2008, not when GMAC purchased lender-placed insurance in January 2005. Accordingly, Plaintiffs' claim for wrongful acceleration is not barred by the three-year statute of limitations.

GMAC contends that it properly accelerated the mortgage loan because Plaintiffs' account was in default at the time of acceleration. The note required Plaintiffs to "make . . . monthly payments on the first day of each month beginning on August 1, 2004." (Dkt. # 57-1 at Pg ID 208 § 3(A).) Plaintiffs were in default when they did not pay in full each monthly payment. (*Id.* at Pg ID 210 § 7(B).) The deed of trust further provides that "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." (Dkt. # 57-1 at Pg ID 215 § 1.) If Plaintiffs breached the deed of trust and fell into default, GMAC could accelerate the mortgage loan. (*Id.* at Pg ID 224 § 22.)

Plaintiffs did not stay current on their mortgage loan throughout 2008. No payment was made in January 2008. (Dkt. # 67 at Pg ID 413; Dkt. # 69-2 at Pg ID 447.) A payment made on February 1, 2008, was reversed on February 15, 2008, due to insufficient funds. (Dkt. # 67 at Pg ID 413; Dkt. # 69-2 at Pg ID 448-49.) Plaintiffs made a payment on February 27, 2008. (Dkt. # 67 at Pg ID 413; Dkt. # 69-2 at Pg ID 450.) Pursuant to the deed of trust, when a borrower is delinquent on a monthly payment, any future payments are applied to each monthly payment in the order in which the monthly payment became due. (Dkt. # 57-1 at Pg ID 215 § 2.) Accordingly, Plaintiffs' February 27, 2008 payment was applied to the missing January 2008 payment. (Dkt. # 67 at Pg ID 413; Dkt. # 69-2 at Pg ID 450.) Plaintiffs did not make a payment on March 1, 2008, but made two payments on March 18, 2008, which applied to the missing February and March payments, respectively. (Dkt. # 67 at Pg ID 413; Dkt. # 69-2 at Pg ID 450-51.)

No payments were made during April 2008 or May 2008. (Dkt. # 67 at Pg ID 413; Dkt. # 69-2 at Pg ID 452-53.) Plaintiffs made two payments on June 11, 2008, which satisfied the missing April and May payments, but left the account delinquent for June 2008. (Dkt. # 67 at Pg ID 413; Dkt. # 69-2 at Pg ID 453-54.) No payment was made in July 2008. (Dkt. # 67 at Pg ID 413-14; Dkt. # 69-2 at Pg ID 455.) Plaintiffs' next payment arrived on August 5, 2008, which applied to the missing June payment. (Dkt. # 67 at Pg ID 414; Dkt. # 69-2 at Pg ID 456-457.) No payment was made on September 1, 2008, leaving the account delinquent for the months of July, August, and September. (Dkt. # 67 at Pg ID 414; Dkt. # 69-2 at Pg ID 457.) GMAC has not accepted any further payments from Plaintiffs.

As Plaintiffs were in default throughout 2008, GMAC could accelerate the mortgage loan after giving Plaintiffs notice. (Dkt. # 57-1 at Pg ID 224 ¶ 22.) Proper notice required GMAC to specify:

(a) the default;

(b) the action required to cure the default;

(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and

(d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the Deed of Trust] and sale of the Property.

(*Id.*) The notice must also have informed Plaintiffs of their "right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." (*Id.*)

GMAC provided Plaintiffs with two notices of default, both of which complied with the deed of trust's notice requirements. The first notice of default, dated July 3, 2008, informed Plaintiffs that their June 1, 2008 payment was delinquent and demanded a payment for the total amount due, including late charges and fees, of $8,258.85. (Dkt. # 85-1 at Pg ID 517.) The notice explained that "[u]nless [GMAC] receive[s] full payment of all past-due amounts, [GMAC] will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings." (*Id.* at Pg ID 518.) Plaintiffs did not tender a payment of $8,258.85 within thirty days of the July 3, 2008 notice.

A second notice of default, dated August 5, 2008, informed Plaintiffs that their July 1, 2008 payment was delinquent and demanded a payment for the total amount

9

due of $7,604.00. (Dkt. # 85-2 at Pg ID 519.) The second notice provided Plaintiffs with the same information as the first notice regarding their rights and obligations. Plaintiffs did not tender a payment of $7,604 within thirty days of the August 5, 2008 notice. Accordingly, as GMAC provided Plaintiffs with two notices of default, and Plaintiffs failed to cure their default in both instances, GMAC could properly accelerate the mortgage loan. GMAC did so sometime in October 2008.[2]

Plaintiffs provide their own accounting of the mortgage loan that shows they had overpaid by approximately $15,000 when GMAC accelerated the loan due to GMAC's improper assessments such as late fees, foreclosure inspection fees, and lender-placed insurance. (Dkt. # 67 at Pg ID 399-402.) Even if Plaintiffs' accounting is accurate, the deed of trust explains that "[n]o offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument." (Dkt. # 57-1 at Pg ID 215 § 1.) Throughout 2008, Plaintiffs failed to make their monthly payments on time, causing GMAC to send two notices of default. When those defaults were not cured, GMAC correctly initiated foreclosure proceedings.

---

[2] The exact date on which GMAC accelerated the mortgage loan is unclear. GMAC's foreclosure firm, McCurdy & Candler, LLC, mailed Plaintiffs a letter dated October 16, 2008, but postmarked October 22, 2008, stating that the loan had been accelerated. (Dkt. # 67 at Pg ID 388-91.) McCurdy & Candler, LLC, sent Plaintiffs a second letter, also postmarked October 22, 2008, but dated October 23, 2008, that demanded immediate payment of the loan's entire outstanding balance. (*Id.* at Pg ID 392.)

Plaintiffs argue that, even under GMAC's accounting of the mortgage loan, acceleration was premature. Plaintiffs apply GMAC's accounting and assume that the mortgage loan was paid through June. GMAC owed Plaintiffs $3,794 for the improperly placed hazard insurance, which GMAC credited to the escrow account on August 6, 2009. According to Plaintiffs, if they had received that credit before September 2008, it would have satisfied the missing July payment. Plaintiffs aver that, after they failed to make a payment on August 1, they would not have received a notice of default until August 31. As acceleration cannot occur until thirty days from the date of the default notice, Plaintiffs claim that the mortgage loan would have been accelerated, at the earliest, on September 30. But because Plaintiffs made a payment of $3,688.92 on September 15, 2008, they maintain that GMAC could not have accelerated the loan on September 30. GMAC would have needed to wait until Plaintiffs again defaulted, after which GMAC was required to send a new notice of default and allow thirty-days to pass before accelerating the loan. Therefore, Plaintiffs contend that their mortgage loan was wrongfully accelerated without thirty-days notice.

This proposed time line fails for several reasons. First, Plaintiffs incorrectly claim that the $3,794 credit for the lender-placed insurance would have satisfied the missing July payment. Plaintiffs were required to make a monthly payment on July 1, regardless of any amount owed to them due to GMAC improperly placing insurance on the Property. By not making a July 1 payment, Plaintiffs allowed their account to become delinquent, and GMAC properly sent Plaintiffs a notice of default for the missing payment. Furthermore, the $3,794 credit was less than the monthly payment amount of $4,010.55, (Dkt. # 76-1 at Pg ID 491 ¶ 6), and thus could not have satisfied the missing

11

July payment.  Second, Plaintiffs offer no support for their assertion that GMAC had to wait until August 31 to send Plaintiffs a notice of default on the missing August payment; pursuant to the deed of trust, it appears that GMAC could send Plaintiffs a notice of default any time after Plaintiffs missed a monthly payment.  (Dkt. # 57-1 at Pg ID 224 § 22.)

Third, Plaintiffs' payment of $3,688.92 on September 15, 2008, did not require GMAC to send a subsequent notice of default because GMAC rejected the payment.  The deed of trust states that "Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the loan current."  (*Id.* at Pg ID 215.)  As of September 1, Plaintiffs were delinquent on their payments for the months of July, August, and September.  Each missing payment was $4,010.55, resulting in a total amount due of $12,031.65 ($4,010.55 x 3), excluding late charges, fees, and costs.  Plaintiffs' payment of $3,688.92 did not satisfy even one of the missing payments, let alone all three.  GMAC so informed Plaintiffs by returning their check and explaining that "[t]hese funds do not represent the full amount due to reinstate your account at this time."  (Dkt. # 67 at Pg ID 387.)  Thus, GMAC properly refused Plaintiffs' September 15, 2008 payment.

Most importantly, Plaintiffs cannot dispute that they received two notices of default but failed to cure the default in either instance.  The July 3, 2008 notice of default established that Plaintiffs' account was delinquent for June 1, 2008, and warned that their mortgage loan would be accelerated if GMAC did not receive $8,258.85 within thirty days.  A similar August 5, 2008 notice of default stated that the July 1, 2008 payment was missing and that Plaintiffs had thirty days to pay $7,604 to prevent

12

acceleration. Plaintiffs did not pay the amount demanded in either of the notices of default within thirty days of the date of notice.

GMAC did not wrongfully accelerate Plaintiffs' mortgage loan in October 2008, and the court will grant summary judgment in its favor.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's motion to strike Plaintiffs' counter-motion for partial summary judgment [Dkt. # 70] is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for partial summary judgment [Dkt. # 57] is GRANTED, and Plaintiffs' motion for partial summary judgment [Dkt. # 66] is DENIED.

       s/Robert H. Cleland
       ROBERT H. CLELAND
       UNITED STATES DISTRICT JUDGE

Dated: June 19, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 19, 2013, by electronic and/or ordinary mail.

       s/Lisa Wagner
       Case Manager and Deputy Clerk
       (313) 234-5522